NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

SCOTT W. ZAHN,

    Plaintiff,

v.

CITY OF TRENTON, CITY OF
TRENTON POLICE DEPARTMENT,
PATROL OFFICER MICHAEL
KRUCHINSKY, and JOHN DOE
OFFICERS 1-5,

    Defendants.

Civil No. 06-3064 (AET)

**MEMORANDUM & ORDER**

---

THOMPSON, U.S.D.J.

This matter is before the Court upon Defendants[1] Michael Kruchinsky's and City of Trenton's[2] Motions For Summary Judgment Pursuant to Fed. R. Civ. P. 56.[3] The Court has decided these Motions based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' Motions are granted

---

[1] Defendant Officer Michael Kruchinsky brings this Motion, upon which Defendant City of Trenton relies. Accordingly, this Court decides these Motions together.

[2] The Court notes that, in New Jersey, a municipal police department is not distinct from the municipality, N.J. Stat. Ann § 40A:14-118, and, therefore, the City of Trenton Police Department is not a proper defendant here. Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (citing cases). Thus, all claims against the City of Trenton Police Department are dismissed.

[3] The Court notes that, in his Opposition, Plaintiff has moved for summary judgment on the issue of probable cause. Because Plaintiff's motion was not properly brought, the Court will disregard it. Further, Plaintiff's motion would be denied even if the Court were to consider it.

in part and denied in part.

BACKGROUND

Both Plaintiff and Defendants agree that, on July 3, 2004, Officer Kruchinsky responded to a domestic disturbance call by Joell Zahn, Plaintiff's wife. (Def.'s Statement of Material Facts, ¶ 2.) Joell Zahn informed Officer Kruchinsky that she had obtained a temporary restraining order ("TRO") against Plaintiff on June 22, 2004. (Id.) Defendant Kruchinsky determined that, although Joell Zahn had missed a subsequent court hearing, the TRO nonetheless was valid and still in effect. (Id.) Defendant Kruchinsky relayed this information to his supervisor, who directed him to serve the TRO upon Plaintiff. (Id.) Defendant Kruchinsky then dispatched to Plaintiff's residence. (Id., ¶ 3.) When Plaintiff answered the door, Officer Kruchinsky advised Plaintiff that he was there to serve the TRO upon him. (Id., ¶ 4.) At this point, the parties' version of the facts diverge, and it is enough for the Court to note that Defendants recall the incident unfolding very differently. Because Plaintiff is the non-moving party and his version of the incident does not correspond in the least with the Defendants', Scott Zahn's view of the facts is set forth below.

Plaintiff testified at his deposition that he twice refused to accept service of the TRO from Defendant Kruchinsky. (Zahn Dep. 149.) Officer Kruchinsky responded, "Have it your way," and turned to leave. (Id.) Defendant Kruchinsky had walked down the steps and was on his way to his patrol car when Plaintiff stepped onto the landing and called him back to request assistance with the situation with Plaintiff's wife. (Id. at 149-50.) Plaintiff informed Defendant Kruchinsky that he had proof that he had been granted custody of the couple's children (Id. at 151), and asked Defendant Kruchinsky to wait where he was while Plaintiff went into his house to retrieve the

proof. (Id. at 167.) Plaintiff did not see Defendant Kruchinsky enter the house, but recalled that one of his dogs began growling and charged towards Officer Kruchinsky, who was standing in the doorway. (Id. at 168.) Plaintiff moved his body in between the attacking dog and Defendant Kruchinsky, and, in doing so, bumped into Officer Kruchinsky. (Id. at 173-74.) Plaintiff asked Officer Kruchinsky to step outside onto the landing, and, while he could not recall "if [Kruchinsky] pulled me out by the arm or what," Plaintiff ended up on the landing with Defendant Kruchinsky. (Id. at 178-79.) Defendant Kruchinsky informed Plaintiff that he was not going to help him with the situation with his wife, and turned to walk back to his car a second time. (Id. at 180-81.)

Plaintiff twice told Defendant Kruchinsky that he was going to call the Trenton Police Department for assistance, and Officer Kruchinsky returned to the landing and instructed him not to make the calls. (Id. at 182-85.) Defendant Kruchinsky positioned himself between Plaintiff and the front door. Plaintiff turned away from Officer Kruchinsky and managed to call 911, where he reported that, "I've got a cop out here, I think he's gone nuts." (Id. at 190.) Defendant Kruchinsky yelled, "No," and struck Plaintiff's hand with enough force to dislodge the telephone. (Id. at 197.) Officer Kruchinsky then punched Plaintiff at least once or twice to the side of his head and once in the back. (Id.) Plaintiff began screaming for help as he held onto the railing for support, but managed to block Officer Kruchinsky's attempt to pepper spray him. (Id. at 200-01.) Defendant Kruchinsky told Plaintiff to stop resisting and hit Plaintiff in the back of his head with what he later found out was a flashlight. (Id. at 208.) Plaintiff recalled that his legs buckled and he landed face down on the landing. (Id. at 218.) Officer Kruchinsky bounced on top of Plaintiff and he punched him at least one to two more times. (Id. at 218-19.) At some point

shortly after, Defendant Kruchinsky moved off of him, and someone lifted Plaintiff up by the belt and put him face down somewhere else on the landing.[4]  (Id. at 220.)  Plaintiff was handcuffed while an officer's knees were on his back.  As Plaintiff began to stand, a hand reached out and grabbed his ankle, causing him to fall on his knee on the landing.  (Id. at 221-22.)

After Plaintiff was arrested, he was taken to a hospital where he received an x-ray and approximately eight to ten stitches to his head.  (Id. at 229.)  He was then held for several days in jail at the Trenton Police Station before being transferred to the Mercer County Correctional Facility, where he was held until the end of July.  (Id. at 234)  He saw a doctor twice to receive treatment for dizziness and to have his stitches removed while he was held at the Mercer County jail.  (Id. at 236.)  After he was released, he saw a doctor, George Achebe, in October 2006 because of shoulder and hip pain and a ringing in his ears.  (Id. at 237.)  Dr. Achebe has treated Plaintiff approximately seven times in connection with Plaintiff's injuries. (Def.'s App. to Mot. Summ. J., Ex. M.)  Plaintiff has also seen a specialist regarding the ringing in his ears, who diagnosed Plaintiff with "mild essential tinnitus" but otherwise found that his hearing test was normal.  (Def.'s App. to Mot. Summ. J.,  Ex. M.)

Plaintiff was charged with obstructing the administration of the law, resisting arrest, and aggravated assault.  (Def.'s Statement of Material Facts ¶ 20; Zahn Dep. 233.)  His criminal case was adjourned a number of times before being dismissed because of Defendant Kruchinsky's failure to appear in court.  (Def.'s Statement of Material Facts ¶ 20; Zahn Dep. 251-52.)

PROCEDURAL HISTORY

---

[4]  By this point, backup units had arrived and Plaintiff was not able to identify who was at the scene.  (Zahn Dep. 220.)

On July 3, 2006, Plaintiff filed this action, seeking relief on several Counts: (1) Defendants' actions violated his Fourth Amendment right to be secure in his person; (2) under 42 U.S.C. § 1983, Plaintiff was falsely arrested and falsely imprisoned by Defendants in violation of his rights under the federal and New Jersey Constitutions;[5] (3) that Defendant Kruchinsky violated Plaintiff's Fourth and Fourteenth Amendment rights in using excessive force to effect his arrest, and that Defendant City of Trenton recklessly disregarded Plaintiff's rights by its actions and inactions; (4) that Defendant City of Trenton acted negligently in failing to train its police officers as to the scope of their authority, in failing to discipline or sanction police officers who violate the rights of citizens, and on a theory of *respondeat superior* with respect to the actions of Defendants Kruchinsky and John Does 1-5; (5) Defendants committed assault and battery of Plaintiff, injuring Plaintiff physically and emotionally; (6) that Plaintiff was subject to malicious prosecution in violation of 42 U.S.C. § 1983[6] and state common law. Defendants' Motions for Summary Judgment were filed on August 2, 2007 and August 9, 2007, respectively. On August 29, 2007, Plaintiff and Defendant City of Trenton entered into a Stipulation of Dismissal of Count III with prejudice.

## DISCUSSION

A.    Standard of Review of Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 56

---

[5] Violations of state law are not actionable pursuant to 42 U.S.C. § 1983. Kulwicki v. Dawson, 969 F.2d 1454, 1468 (3d Cir. 1992). However, the Court will consider Plaintiff's state law claims for false arrest and false imprisonment.

[6] Section 1983 does not itself create a federal right. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (noting that § 1983 "is not itself a source of substantive rights"). This Court understands, based upon a reading of the Plaintiff's Complaint and Opposition to this Motion, the malicious prosecution claim to be predicated on violations of the Fourth Amendment.

Summary judgment is appropriate if, on the record, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," and construes all facts and inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); see also Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). To survive a motion for summary judgment, a plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.   Count One

Count One alleges a violation of Plaintiff's "right to be secure in his own person" under the Fourth Amendment. As best the Court can determine, the Plaintiff's allegations state Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution, which form the basis of other Counts in the Complaint. Accordingly, Count One will be considered under the Court's probable cause analysis with respect to the arrest and imprisonment (Count Two), *infra*.

C.   Count Two

Plaintiff brings claims of false arrest and false imprisonment in violation of federal and state law. Defendants argue that probable cause existed for Plaintiff's arrest, and thus his arrest and subsequent incarceration are valid. See Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997); Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (noting that a detention

pursuant to an arrest not supported by probable cause gives rise to a false imprisonment claim under § 1983).  In evaluating whether probable cause exists for a warrantless arrest, a court must analyze "whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed."  Sharrar, 128 F.3d at 818 (internal citations omitted).

Here, Defendant Kruchinsky contends that Plaintiff's refusal to accept service of the TRO supplied probable cause to arrest him for obstructing the administration of the law in violation of N.J. Stat. Ann. § 2C:29-1a.  (Def.'s Br. 18) The statutory language dictates that an obstruction occurs "by means of flight, intimidation, force, violence, or physical interference or obstacle." N.J. Stat. Ann. § 2C:29-1a.  At least one New Jersey court has interpreted the obstruction statute to require a physical interference by the defendant.  State v. Camillo, 887 A.2d 1151, 1156 (N.J. App. Div. 2005). While the Court can find no case suggesting that refusal to accept service of a TRO constitutes obstruction of administration of the law, it is mindful that there may arise certain situations where an individual's verbal abuse can amount to a use of intimidation to obstruct the administration of law.  See, e.g., Johnson v. City of Pleasantville, 05 Civ. 4258, 2007 U.S. Dist. LEXIS 35078, at *11 (D.N.J. May 14, 2007) ("A person may be convicted of obstruction of justice where the individual curses at police and refuses to follow police instructions as the officers attempt to make an arrest.").  Drawing all reasonable inferences from the facts in Plaintiff's favor, the Court determines that this is not such a case.

Plaintiff has testified that Defendant Kruchinsky accepted his refusal to accept the TRO and turned to walk away towards his patrol car, returning only when Plaintiff stepped outside to request his assistance with the situation concerning Plaintiff's wife.  Plaintiff twice attempted to

call the Trenton Police Department when Officer Kruchinsky declined to help. Defendant Kruchinsky became angry, warned Plaintiff not to make the calls, returned to the landing and knocked the phone out of Plaintiff's hand. Plaintiff has offered sufficient evidence such that a rational finder of fact could rule in his favor with respect to the issue of probable cause. On the basis of these facts, Defendant Kruchinsky could not have reasonably believed that Plaintiff had committed the offense of obstructing the administration of law.[7] Thus, Defendant's Motion for summary judgment with respect to the federal law claims in Count Two is denied.

Plaintiff's state law claims of false arrest and false imprisonment are analyzed in the same manner. See Fleming v. United Parcel Serv., Inc., 604 A.2d 657, 680 (N.J. Super. Ct. 1992) (noting that the absence of probable cause is an element of both torts). However, Defendants argue that summary judgment is warranted because the New Jersey Tort Claims Act ("NJTCA") bars actions for damages for pain and suffering by a plaintiff who has not suffered a permanent loss of a bodily function. Specifically, the NJTCA provides:

> No damages shall be awarded against a public entity or public employee
> for pain and suffering resulting from any injury; provided, however, that
> this limitation on the recovery of damages for pain and suffering shall
> not apply in cases of permanent loss of a bodily function, permanent
> disfigurement or dismemberment where the medical expenses are
> in excess of $3600.00.

N.J. Stat. Ann § 59:9-2(d). Plaintiff argues that the scar he received as a result of the laceration caused by the blow of Defendant Kruchinsky's flashlight constitutes a permanent injury. (Pl.'s Opp'n Br. 26.)

---

[7] Defendant Kruchinsky also argues that he had probable cause to arrest Plaintiff for assault and disorderly conduct. (Def.'s Br. 28) This argument cannot be sustained on Plaintiff's version of the facts.

While a scar may constitute a permanent disfigurement that meets the threshold of the NJTCA, see Gilhooley v. County of Union, 753 A.2d 1137, 1143 (N.J. 2000) ("[I]n order to be considered a permanent disfigurement, a scar must impair or injure the beauty, symmetry, or appearance of a person, rendering the bearer unsightly, misshapen or imperfect"), Plaintiff fails to adduce sufficient evidence that would establish a genuine issue of material fact as to whether a rational fact-finder could find that the scar impairs his appearance. Thus, summary judgment for Defendants with respect to Plaintiff's state law claims in Count Two is granted.

D.    Count Three

Defendant Kruchinsky argues that the force used in effecting Plaintiff's arrest was reasonable in light of the circumstances. Excessive force claims asserted by an arrestee are more appropriately characterized as Fourth Amendment claims, rather than Fourteenth Amendment claims. Graham v. Connor, 490 U.S. 386, 395 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). Excessive force claims are analyzed according to an objective reasonableness standard. Sharrar, 128 F.3d at 820. A court must consider the totality of circumstances, and factors a court may take into account include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 821-22.

Here, prior to Plaintiff's struggle with Officer Kruchinsky, Plaintiff had begun to make a couple of telephone calls to the Trenton Police Department to enlist its help with respect to his family situation. While the TRO had been issued in connection with an alleged domestic violence incident, Plaintiff's testimony does not establish that he posed a threat to Defendant Kruchinsky's safety or to others, nor does it demonstrate that he was resisting or evading arrest

when the physical confrontation began. According to Plaintiff, Defendant Kruchinsky responded to Plaintiff's telephone calls by knocking the phone out of his hand, punching him at least a couple of times, pushing him against the front railing, striking Plaintiff's head with his flashlight, and bouncing on top of him as Plaintiff lay face down on the landing. The Court cannot conclude that Defendant Kruchinsky's use of force was objectively reasonable as a matter of law, and, therefore, summary judgment with respect to this count is denied.

E.     Count Four

The Court notes that Count Four of the Complaint asserts a negligence cause of action only against Defendant City of Trenton. Therefore, the Court does not consider this claim as part of Defendant Kruchinsky's Motion. City of Trenton argues that Plaintiff has failed to demonstrate that his scar constitutes a permanent disfigurement within the meaning of the NJTCA, and as noted above, this Court agrees. Thus, summary judgment is granted with respect to Plaintiff's negligence claim.[8]

F.     Count Five

Plaintiff's state law claims for assault and battery similarly fail because Plaintiff's physical injuries failed to meet the NJTCA's threshold under N.J. Stat. Ann. § 59:9-2(d). Plaintiff also argues that the assault and battery injured him emotionally. In the absence of physical injury, however, a plaintiff cannot recover damages for emotional distress under the NJTCA. See Ayers v. Township of Jackson, 525 A.2d 287, 297 (N.J. 1987) ("[T]he [New

---

[8]     The Court notes that Defendant Kruchinsky's Motion presupposes that Plaintiff's negligence claim is brought under § 1983. The Court believes that an accurate reading of the Complaint suggests that Plaintiff only brought state law claims for negligence. However, were Plaintiff to allege negligence against Defendant City of Trenton under § 1983, the Court would grant summary judgment.

Jersey] legislature has expressly determined that the pain and suffering occasioned by . . . emotional distress is not compensable by damages" from a municipality).  Therefore, because Plaintiff has failed to establish that he has a permanent disfigurement, Plaintiff cannot recover for his emotional injuries.  Summary judgment is granted on this Count.

G.    Count Six

The elements of a malicious prosecution claim under § 1983 are "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously . . .; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).  The elements of the analagous state law claim are largely the same, though the plaintiff need not show that a seizure occurred within the meaning of the Fourth Amendment.  See Lind v. Schmid, 337 A.2d 365, 368 (N.J. 1975) (outlining the elements of malicious prosecution).  Summary judgment for the Defendants on the § 1983 claim is not appropriate because there is a factual dispute concerning the circumstances of Plaintiff's arrest and whether probable cause existed.  Summary judgment is granted with respect to the state law claim because Plaintiff does not have a permanent disfigurement within the meaning of the NJTCA.

H.    Qualified Immunity

Defendants assert that they are entitled to qualified immunity with respect to Plaintiff's § 1983 claims.  Public officials who perform discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,


457 U.S. 800, 818 (1982); Sharrar, 128 F.3d at 826.  A court must first decide whether, construed in the light most favorable to the plaintiff, the facts alleged establish that the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the court concludes that there has been no such violation, the inquiry ends and the official is entitled to qualified immunity.  Wright v. City of Phila., 409 F.3d 595, 600 (3d Cir. 2005).  If a violation is alleged, the next step is to determine whether the constitutional right at issue was clearly established by inquiring "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

Here, construing the facts in the light most favorable to the Plaintiff, he has shown that Defendant Kruchinsky instigated a physical confrontation when Plaintiff had done nothing more than attempt to make telephone calls to the Trenton Police Department and that he may have used unreasonable force in effecting Plaintiff's arrest.  Thus, because there are genuine issues of material fact relating to the circumstances of Plaintiff's arrest that must be resolved, Defendants are not entitled to qualified immunity with respect to Plaintiff's federal law claims

I.      John Doe Defendants

According to Fed. R. Civ. P. 21, "parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."  Fed. R. Civ. P. 21.  A court may drop John Doe defendants pursuant to this Rule.  See, e.g., Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (citing cases).  Therefore, the Court exercises its discretion under Fed. R. Civ. P. 21 to dismiss the John Doe defendants from this action because Plaintiff has not been able to identify these defendants or provide any basis of their liability with respect to the incident that gives rise to this action.

CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 20th day of September, 2007,

ORDERED that Defendants Michael Kruchinsky's and City of Trenton's Motion for Summary Judgment [11], [14], is GRANTED with respect to the state law claims in COUNTS 2 and 6 and GRANTED with respect to COUNTS 4 and 5; and it is further

ORDERED that Defendants Michael Kruchinsky's and City of Trenton's Motion for Summary Judgment [11], [14], is DENIED with respect to the federal claims in COUNTS 2 and 6 and DENIED with respect to COUNTS 1 and 3.

<div style="text-align:right">

      s/ Anne E. Thompson      
ANNE E. THOMPSON, U.S.D.J.

</div>